**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RICHARD LANE HOPKINS )
)
     Plaintiff, )
)
v. )
)   Case No. 1:10-CV-02025-RMC
GRANT THORNTON INTERNATIONAL )
and GRANT THORNTON LLP )
)
     Defendants. )
)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
GRANT THORNTON, LLP'S OPPOSITION TO PLAINTIFF RICHARD HOPKINS'
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Jonathan G. Rose (DC Bar 446208)
Emily S. Costin (DC Bar 500201)
Alston & Bird, LLP
950 F Street, NW
Washington, D.C. 20004
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
jonathan.rose@alston.com
emily.costin@alston.com

*Counsel for Defendant Grant Thornton, LLP*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ..................................................................................................... 3

   A.  Plaintiff Is Not Eligible For The Protections Of The DCFMLA ........................................... 3

   B.  Plaintiff Did Not Suffer From A Serious Health Condition................................... 6

   C.  Plaintiff's Retaliation Claim Fails As A Matter Of Law ....................................... 9

   D.  Plaintiff's FMLA Interference Claim Fails As A Matter Of Law ...................................... 13

     1. Grant Thornton Did Not Impermissibly Interfere With Plaintiff's FMLA Rights .......... 13

     2. Contrary To Plaintiff's Contention, The FMLA Does Not Impose Strict Liability ........ 14

     3. Plaintiff Was Not Prejudiced By Any Of Grant Thornton's Actions .............................. 18

III.  CONCLUSION.................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andonissamy v. Hewlett-Packard Co.,*
No. 05 C 3080, 2007 U.S. Dist. LEXIS 39930 (N.D. Ill. May 30, 2007) ...............................7

*Bacon v. Hennepin Cnty. Med. Ctr.,*
550 F.3d 711 (8th Cir. 2008) .................................................................................................15

*Barker v. R.T.G. Furniture Corp.,*
No. 8:08-CV-484-T-33MAP, 2009 U.S. Dist. LEXIS 52189 (M.D. Fla. June 22,
2009) .........................................................................................................................................8

*Brown v. Dist. of Columbia,*
251 F. Supp. 2d 152 (D.D.C. 2003) .......................................................................................12

*Colbert v. Chao,* No. Civ. A. 99-0625, 2001 WL 710114 (D.D.C. June 19, 2001) ....................12

*Cooke v. Rosenker,*
601 F. Supp. 2d 64 (D.D.C. 2009) .........................................................................................11

*Dorsey v. Jacobson Holman, PLLC,*
No. Civ. A. 09-1085 RMC, 2010 WL 5168782 (D.D.C. Dec. 21, 2010) ...............................10

*Dowell v. Ind. Heart Physicians, Inc.,*
No. 1:03-cv-1410-DFH-TAB, 2004 U.S. Dist. LEXIS 26433 (S.D. Ind. Dec. 22,
2004) .........................................................................................................................................6

*Henson v. Hawker Beechcraft Corp.,* No. 4:09CV00440JLH, 2010 WL 3167528 (E.D.
Ark. Aug. 10, 2010) ...............................................................................................................18

*Ilhardt v. Sara Lee Corp.,*
118 F.3d 1151 (7th Cir. 1997) ...............................................................................................17

*Landahl v. Dep't of Commerce,*
10 Fed. App'x. 950 (Fed. Cir. 2001).........................................................................................7

*Lowery v. Strength,*
356 Fed. App'x. 332 (11th Cir. 2009) ......................................................................................7

*Mason v. St. Vincent Hosp. & Health Care Ctr.,*
No. 1:03-cv-0930-LJM-VSS, 2004 U.S. Dist. LEXIS 27414 (S.D. Ind. Nov. 8, 2004) ..........6

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..........................................................................................10, 11, 12

*O'Connor v. PCA Family Health Plan, Inc.*,
200 F.3d 1349 (11th Cir. 2000) ............................................................................17

*Ransom v. Ctr. for Non-Profit Advancement*,
514 F. Supp. 2d 18 (D.D.C. 2007) ........................................................................12

*Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009)................................10

*Stallings v. Hussman Corp*,
447 F.3d 1041 (8th Cir. 2006) ..............................................................................15

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981)...............................................................................................10

## STATUTES

29 U.S.C. § 2612 ................................................................................................................7

## OTHER AUTHORITIES

29 C.F.R. § 825.113 ..........................................................................................................6

29 C.F.R. § 825.115 ..........................................................................................................6

D.C. Mun. Regs. § 1603.1 ................................................................................................5

Federal Rule of Civil Procedure 56 ................................................................................1

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), Defendant Grant Thornton, LLP ("Grant Thornton" or "Defendant") by and through undersigned counsel, respectfully submits this Opposition to Plaintiff Richard Hopkins' ("Plaintiff" or "Mr. Hopkins") Cross-Motion for Summary Judgment (the "Cross-Motion") (Doc. No. 33).   Grant Thornton hereby incorporates by reference all of the arguments contained in its Motion for Summary Judgment and Memorandum of Law in Support (the "Motion"), as well as the facts set forth in its Statement of Facts Not In Genuine Dispute ("Def. SOF") filed on August 12, 2011 (Doc. No. 32).   For all of the reasons discussed herein, and in Grant Thornton's Motion, it is respectfully submitted that Plaintiff's Cross-Motion should be denied, and judgment should be entered in favor of Defendant Grant Thornton on Counts One through Six of the Amended Complaint.

## I.  **INTRODUCTION**

Plaintiff's Cross-Motion plainly demonstrates that he has no legal or factual support for his threadbare claims.  Despite the fact that Plaintiff has unequivocally admitted that he was *not* based in the District of Columbia, but instead worked primarily in Virginia and Iraq during his three-year employment with Grant Thornton, he outrageously persists in pursuing his claims under the District of Columbia Family and Medical Leave Act ("DCFMLA").  To support his strained theory that he is an "eligible employee" under the DCFMLA, he relies *solely* upon a *proposed regulation* that sought to extend the DCFMLA's requirements beyond the geographic boundaries of the District.  However, that regulation was proposed in May 2010 long *after* Plaintiff's termination on March 16, 2010, and, significantly, was ultimately *rejected* in favor of maintaining the long-standing (and logical) parameter that *District of Columbia employers need only comply with the DCFMLA for employees who work within the District.*  Plaintiff did not. Therefore, unquestionably, Plaintiff is not eligible for the protections of the DCFMLA.

Furthermore, Plaintiff has not, and cannot, establish *any* causal connection between his March 11 discussion with Ms. Campbell about some personal issues and his lay-off, which is fatal to his alleged *prima facie* case for retaliation.  Nevertheless, *even if* Plaintiff can establish a *prima facie* case for retaliation (which he cannot), Grant Thornton has provided more than ample, irrefutable evidence that Plaintiff's discussion with Ms. Campbell had absolutely nothing to do with the company's decision to let him go.  Rather, Grant Thornton had a legitimate business rationale for terminating Plaintiff's employment – namely, his lack of billable work, lack of prospects for finding billable work and the mass lay-off of employees in the International Division.  With his Cross-Motion, Plaintiff does not even *attempt* to refute the overwhelming evidence that Grant Thornton's decision to let him go was simply a financially motivated business decision.  Because Plaintiff has not come close to meeting his burden of persuasion on this issue under *McDonnell-Douglas*, Plaintiff's retaliation claim fails.

Finally, though Plaintiff strains mightily to suggest that claims of "interference" under the FMLA must be held to a "strict liability" standard, this argument is not supported by the law, the plain language of the statute and the Department of Labor's implementing regulations.  Grant Thornton had no obligation to maintain Mr. Hopkins' employment just because he obtained the FMLA paperwork if the company would have terminated him anyway.  Thus, Plaintiff's interference claim fails as a matter of law.

## II. <u>ARGUMENT</u>

### A.   <u>Plaintiff Is Not Eligible For The Protections Of The DCFMLA</u>

In its Motion, Grant Thornton established that Plaintiff is not eligible for the protections of the DCFMLA because – *by his own admission* – he was not based in, and did not work in, the District of Columbia during his three-year employment with Grant Thornton; therefore, he was not an "eligible employee" under the D.C. Code § 32-501(1). *See* Motion at pp. 39-41.[1]   In his Cross-Motion and supporting Rule 7(h) Statement of Facts ("Pl. SOF"), Plaintiff fails to submit *any* evidence that he ever even worked in the District of Columbia during his employment with Grant Thornton. *See generally* Pl. SOF at pp. 1-3.   In fact, although he submits that Grant Thornton is an "eligible employer" within the meaning of D.C. Code § 32-501(2) (Pl. SOF ¶ 12), he proffers no facts or evidence that he was an "eligible employee" within the meaning of D.C. Code § 32-501(1) at the time of his termination from Grant Thornton on March 16, 2010. *See generally*, Pl. SOF.  Instead, without first establishing that he ever even worked one hour in the District of Columbia (let alone that he was based in the District), Plaintiff disingenuously leaps to a legal argument that he is somehow entitled to the protections of the DCFMLA. *See* Cross-Motion at pp. 4-5.   Plaintiff's analysis fails all reason and logic.

The DCFMLA[2] applies to employers *in the District of Columbia*.  The Notice of Final Rulemaking[3] implementing the DCFMLA explicitly states that this law entitles "eligible

---

[1]     In this regard, Plaintiff unequivocally admitted that he did not spend "more than fifty percent (50%) of his work-time" working for Grant Thornton in the District of Columbia, and he was not "based" in the District of Columbia, at any point during his employment with Grant Thornton.  Def. SOF ¶¶ 163-64.

[2]     District of Columbia Family and Medical Leave Act of 1990, D.C. Law 8-181, D.C. Code Ann. §§32-501-517, formerly §§36-1301-1317 ("DCFMLA").

[3]     A copy of this Notice of Final Rulemaking, 38 D.C.R. 4350 (July 12, 1991), is attached as Exhibit A.

employees *in the District of Columbia*" up to sixteen weeks of unpaid family and medical leave. *See* Exhibit A, at p. 1. Thus, at the time Mr. Hopkins was employed by Grant Thornton (from September 2007 to March 16, 2010) the boundaries of the DCFMLA were clear: an employee must actually work *within the District* in order to be eligible for the rights and protections afforded under the DCFMLA.

On May 7, 2010 – two months *after* Mr. Hopkins was terminated from Grant Thornton – the District of Columbia Office of Human Rights ("OHR") issued a Notice of Proposed Rulemaking ("May 7 Notice") which contemplated amending the then-existing DCFMLA regulations in order to comport with the federal regulations for the FMLA.[4]  However, the May 7 Notice contained several additional and far more burdensome requirements for District employers, including the possibility of *expanding* the DCFMLA's coverage to include employees who work within 75 miles of the District.  *See* Exhibit B at p. 3, § 1601.5. Presumably this May 7 Notice was a jumbled attempt to "mirror" the FMLA's requirement that "eligible employees" include only those employees who work at a location with more than 50 employees within 75 miles.  *See* 29 U.S.C. § 2611(2)(B)(ii); 29 C.F.R. § 825.111.

Because this change would be extremely significant and far more onerous for local employers (as it would require District employers with offices in Maryland and Virginia to offer DCFMLA leave for employees in those offices too), the OHR received numerous comments and objections from private entities.  A second notice of proposed rulemaking was issued on October 22, 2010 ("October 22 Notice"), which superseded the May 7 Notice of Proposed Rulemaking.[5] The October 22 Notice *rejected* the proposed provision to expand the DCFMLA outside the

---

[4]      A copy of this Notice of Proposed Rulemaking, 57 DCR 3929 (May 7, 2010) is attached as Exhibit B.

[5]      A copy of this Notice of Proposed Rulemaking, 57 DCR 9965 (October 22, 2010) is attached as Exhibit C.

boundaries of the District, and instead *clarified* that an "eligible employee" is "an individual **who works within the District**." *See* Exhibit C at p. 4, § 1603.1, and p. 2, § 1601.5 ("eligible employees shall include those employees who work within the District."). The October 22 Notice further *clarified* what it means to "work within the District" as:

> An employee shall be deemed to work within the District **if the person spends more than fifty percent (50%) of his or her work-time working for the employer in the District**, if the person is employed by the employer in more than one (1) location, **or the employee is based in the District of Columbia** and regularly spends a substantial part of his or her time working for the employer in the District of Columbia and does not spend more than fifty percent (50%) of his or her work-time working for the employer in any particular state.

*Id.* at p. 5, § 1603.5. On November 19, 2010 the OHR issued a Notice of Final Rulemaking, adopting the October 22 Notice proposed regulations.[6] *See* 4 D.C. Mun. Regs. §§ 1603.1, 1603.5, 1601.5.

Plaintiff has made no effort to establish that he actually worked in the District of Columbia during his three-year employment with Grant Thornton, nor can he.[7] Instead, in order to save his baseless DCFMLA claims, he relies solely upon a regulation that was *proposed* after his employment ended (and was ultimately *rejected*), and not the applicable governing law. Plaintiff was not an "eligible employee" under the DCFMLA and, therefore, his claims under the DCFMLA fail as a matter of law. Indeed, it is perplexing that Plaintiff continues to assert his DCFMLA claims at this late stage without *any* legal and factual support.

---

[6]     A copy of the November 19, 2010 Notice of Final Rulemaking is attached as Exhibit D.

[7]     Plaintiff worked on one project in Washington D.C. for six months in 2008-2009, and again for approximately 6 weeks in the fall 2009. Def. SOF ¶¶ 32, 44. Rather, the majority of his employment with Grant Thornton was based in Baghdad, Iraq, as well as in Alexandria and Arlington, Virginia. Def. SOF ¶¶ 34, 79. Indeed, Mr. Hopkins was, at all times, "based" in GPS' "Alexandria, Virginia office," and, in this regard, applied for and received unemployment in the Commonwealth of Virginia. Def. SOF ¶¶ 26, 165-166.

### B. **Plaintiff Did Not Suffer From A Serious Health Condition**

As set forth in Grant Thornton's Motion, Plaintiff did not suffer from a "serious health condition" as that term is defined in the FMLA.[8]  *See* Motion at pp. 21-29.  Though Grant Thornton does not dispute that Plaintiff was facing a difficult time in his personal life in February 2010 (*i.e.*, dealing with the break-up of a relationship, as well as the death of a personal friend) (Def. SOF ¶¶ 220, 221), such matters are not at all uncommon, and are problems that many people deal with on a daily basis.  Just being "sad" or feeling a little "down" (Def. SOF ¶ 229) simply does not qualify as a "serious health condition" under the FMLA, and does not entitle Plaintiff to the protections of the FMLA.

With his Cross-Motion, Plaintiff offers *no* credible evidence that his alleged "depression, stress and anxiety" qualified as a "serious medical condition."  *See* Pl. SOF ¶¶ 13, 14.  Though Plaintiff now, in the context of litigation, baldly asserts that he believed he suffered from a "serious health condition," this is woefully insufficient.[9]  Plaintiff failed to proffer any medical expert to opine on this issue.  Rather, Plaintiff's "evidence" consists of the limited "notes" maintained by Ms. Baker − a physician's assistant who never attended medical school, and has

---

[8]        In order to qualify as a "serious health condition" under the FMLA, the condition must be an illness, injury, impairment or physical or mental condition that involves "inpatient care" or "continuing treatment by a health care provider."  29 C.F.R. § 825.113.  "Inpatient care" means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care."  29 C.F.R. § 825.114.  Continuing treatment by a health care provider must include a period of incapacity (*i.e.*, inability to work), or a period of absence to receive multiple treatments either for restorative surgery or for a condition that would likely result in a period of incapacity in the absence of medical intervention or treatment. 29 C.F.R. § 825.115.  The term "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113(b)

[9]        *See, e.g., Dowell v. Ind. Heart Physicians, Inc.*, No. 1:03-cv-1410-DFH-TAB, 2004 U.S. Dist. LEXIS 26433, at *19 (S.D. Ind. Dec. 22, 2004) (holding that plaintiff's "own opinion is not sufficient under the FMLA.  She must offer evidence from a treating health care provider that her pregnancy and related depression qualified as a serious health condition.").

no medical training in psychiatry[10] – and the FMLA certification form she created in February 2011 *five months after the commencement of this litigation, with the assistance of counsel.*   *See* Pl. SOF ¶ 13.

This proffered "evidence" actually *undermines* any suggestion that Plaintiff suffered from a "serious medical condition."   Ms. Baker's notes do not even remotely suggest that Plaintiff suffered from any condition that required inpatient care, or a continuous course of treatment by a healthcare provider that rose to the level of "incapacity" required to qualify as a "serious medical condition" under the FMLA.   Rather, as set forth from her notes, Ms. Baker saw Mr. Hopkins twice during the relevant time frame (on February 23 and March 10), and simply recommended that Mr. Hopkins "consider" therapy and prescribed some sleep-aid and anti-anxiety medication. Def. SOF ¶¶ 224, 228; Def. Ex. 92.   Nothing in these contemporaneous notes suggests that Plaintiff's alleged "depression, stress and anxiety" rendered him unable to perform his job duties, or that he needed to take any time off from work beyond possible periodic visits to a therapist.[11] (*Id.*)   In this regard, mere diagnosis of or treatment for depression simply does not mean that

---

[10]     Def. SOF ¶¶ 213-219.

[11]     *See, e.g., Lowery v. Strength*, 356 F. App'x. 332, 334 (11th Cir. 2009); *Landahl v. Dep't of Commerce*, 10 F. App'x. 950, 952 (Fed. Cir. 2001) (holding that plaintiff's "medical outpatient care forms and the list of symptoms he provide . . . show that [plaintiff] suffered from depression and a heart condition, but do not show that these conditions were serious enough to cause him to be unable to perform his job functions."); *Andonissamy v. Hewlett-Packard Co.*, No. 05 C 3080, 2007 U.S. Dist. LEXIS 39930, at *29-30 (N.D. Ill. May 30, 2007) ("[Plaintiff] . . . admits that his doctor never placed any restrictions on his ability to work or perform daily activities. . . . Moreover, [plaintiff] admits that he was able to perform his job . . . In other words, [plaintiff] makes no real argument that he had a serious health condition."); *Wheatley v. J.J.B. Hilliard, W.L. Lyons, Inc.*, No. 3:04-CV726-S, 2006 U.S. Dist. LEXIS 34181, at *27 (W.D. Ky. May 25, 2006) (holding that plaintiff's "depression does not satisfy the standard set forth in 29 U.S.C. § 2612(a)(1)(D); that is, there is no evidence it rendered her unable to perform her job duties.");

Plaintiff was *per se* "incapacitated" or suffering from a "serious medical condition."[12]

Moreover, the FMLA certification form Ms. Baker created in February 2011 – *five months after the commencement of this litigation with the assistance of counsel* – lacks any credibility.  Def. SOF ¶¶ 232-234.  Ms. Baker completed the FMLA medical certification form over one year *after* seeing Mr. Hopkins for any alleged "depression."   (*Id.*)   Her purported "certification" that Plaintiff suffered from a condition that rendered him "incapacitated" is belied by her own contemporaneous notes which say no such thing.  Def. SOF ¶¶ 224, 228 (noting he was in "no apparent distress" and the frequency of symptoms was improved), 231 (noting on March 29 that his "symptoms were continuing to improve on Lexapro").  Plaintiff's failure to set forth any credible evidence that he actually suffered from a serious health condition is fatal to his FMLA claims.  *See, e.g., Cobbs v. Bluemercury*, 746 F. Supp. 2d 137, 144 (D.D.C. 2010) (holding defendants actions did not violate FMLA when plaintiff presented "no evidence" that her injuries qualified as a "serious health condition that makes the employee unable to perform the functions of the position of such employee."); *Lawson-Brewster v. River Valley Sch. Dist.*,

---

[12]       *See Mason v. St. Vincent Hosp. & Health Care Ctr.*, No. 1:03-cv-0930-LJM-VSS, 2004 U.S. Dist. LEXIS 27414, at *20 (S.D. Ind. Nov. 8, 2004) ("Clearly, there are cases in which depression is considered to be a 'serious health condition,' but mere diagnosis of depression does not necessarily dictate that the diagnosed individual is per se 'incapacitated' or suffering from a 'serious medical condition.'"); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591 (7th Cir. 2008) ("Though [plaintiff] had previously received treatment for depression and anxiety, she offered no evidence of incapacity relating to [her] absences . . . [Plaintiff] had an obligation to show a serious health condition, and her general testimony that her condition was serious is insufficient to raise a genuine issue of material fact on this issue."); *Barker v. R.T.G. Furniture Corp.*, No. 8:08-CV-484-T-33MAP, 2009 U.S. Dist. LEXIS 52189, at *11-12 (M.D. Fla. June 22, 2009) ("Although the record demonstrates that [plaintiff] received treatment for depression and anxiety, [plaintiff] offered no evidence that any treatment or condition resulted in, or would result in, incapacity or absence.  No evidence establishes that he was incapacitated due to his condition or that he was unable to perform the functions of his position.  [Plaintiff] provides no medical support for his claims.  [Plaintiff] relies on the deposition testimony of [his doctor] to establish that he was preliminarily diagnosed with 'bi-polar disorder' and 'anxiety disorder.' However, a diagnosis is insufficient alone to demonstrate entitlement to FMLA leave.")

No. 4:06-cv-58, 2008 U.S. Dist. LEXIS 33060, at *23 (W.D. Mich. Apr. 22, 2008) ("[P]laintiff's failure to come forward with any evidence that her depression precluded her from working or performing any other daily activities . . . necessarily results in a conclusion that the defendants are entitled to summary judgment on plaintiff's claim under the FMLA.").

Significantly, Plaintiff also cites testimony from Ms. Baker authenticating her notes and FMLA certification form.  *See* Pl. SOF ¶ 13 *citing* Baker Dep. 162:1-170:22.  Plaintiff's reliance on this testimony is particularly curious.  When being questioned by Plaintiff's own counsel, Mr. Diener, Ms. Baker verified the accuracy of her March 29, 2010 medical notes which unequivocally stated Mr. Hopkins *knew* he was fired due to "company cuts" (Def. SOF ¶ 231):

> Q: You mentioned also when referring to Exhibit 6 that Mr. Hopkins told you something about company cuts?
> A: Yes.
> Q: Did he tell you if that was the reason the company gave him for firing him or if that was what he believed the reason for firing him was?
> ***A: He believed the reason for firing him was company cuts.***
> Q Was he informed by the company that he was fired for company cuts?
> A That I don't know.
> ***Q: So he actually told you "I believe I was fired for company cuts"?***
> ***A: Yes.***

Pl. Ex. M, at 165:11-166:2.  In light of the above, it is incredible that Plaintiff persists in pursuing his meritless FMLA claims in the face of a contradictory admission adduced by his own counsel.

## C.   Plaintiff's Retaliation Claim Fails As A Matter Of Law

As set forth in Grant Thornton's Motion, Plaintiff's *prima facie* retaliation claim fails as a matter of law.  *See* Motion at pp. 29-37.  Plaintiff did not "exercise his rights" afforded under the FMLA because he did not notify Grant Thornton that he had a "serious medical condition."  *See* Motion at pp. 21-29.  Though Mr. Hopkins strains mightily to suggest that he "requested" FMLA leave when he met with Ms. Campbell on March 11, he did not.  Def. SOF ¶¶ 186-200.  He did

not even know what the FMLA was before entering her office that day, and he did not go to her office with any intent to request FMLA leave; rather, he requested a meeting with her in order to discuss a poor performance review.  Def. SOF ¶¶ 186, 187, 190.

Assuming, *arguendo*, Plaintiff is able to establish that he "exercised his rights afforded by the FMLA" when he spoke to Ms. Campbell about the FMLA on March 11 (which he did not), and that Grant Thornton took an adverse employment action against him when it terminated his employment, there is absolutely no evidence establishing any "causal relationship" between the two.   Rather, the uncontroverted evidence adduced demonstrates that the individual who authorized his termination (Ms. Canter) had no knowledge of his meeting with Ms. Campbell. Def. SOF ¶¶ 206, 211.  Contrary to Plaintiff's suggestion, Ms. Campbell did not participate in the decision to terminate Mr. Hopkins; rather, she was just the messenger.  Def. SOF ¶ 212.  In this regard, the temporal proximity of Plaintiff's discussion with Ms. Campbell on March 11 and his termination on March 16 is merely coincidental – ample evidence demonstrates that Grant Thornton began informing Mr. Hopkins about his impending lay-off in January – two months *before* his discussion with Ms. Campbell.  Def. SOF ¶ 51.

Nevertheless, claims of retaliation under the FMLA are analyzed under the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *See Dorsey v. Jacobson Holman*, *PLLC*, 756 F. Supp. 2d 30, 37 (D.D.C. 2010) (Collyer, J.); *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009).  Even if Plaintiff establishes a *prima facie* case, the burden then shifts to Grant Thornton to overcome this presumption by proffering a legitimate basis for this adverse action and then the burden shifts back to a plaintiff to show that the proffered reason is pretextual.  *Id.*  Grant Thornton's burden, however, is merely one of production.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).   Grant

Thornton "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Cooke v. Rosenker*, 601 F. Supp. 2d 64, 72 (D.D.C. 2009) citing *Burdine*, 450 U.S. at 254-55.   Thus, *even if* the Court accepts that Plaintiff has established a *prima facie* case for retaliation, under the *McDonnell Douglas* framework, the Court must look to Grant Thornton's proffered non-discriminatory reasons for terminating his employment.   As set forth in Grant Thornton's Motion, the evidence overwhelmingly demonstrates that Grant Thornton terminated Plaintiff for purely business reasons as part of a reduction in force.  *See* Motion at pp. 34-35; Def. SOF ¶¶ 45, 48, 49, 50-51, 84-99, 100-110, 111-122, 124-51, 155-60. *Cobbs v. Bluemercury*, 746 F. Supp. 2d 137, 142-43 (D.D.C. 2010)("A planned reduction in force necessitated by business conditions is a legitimate reason for terminating an employee."); *Kakeh v. United Planning Org.*, 537 F.Supp.2d 65, 74 (D.D.C. 2008) (holding a reduction in force is a legitimate rationale for plaintiff's termination); *Goss v. George Washington Univ.*, 942 F.Supp. 659, 664 (D.D.C. 1996) (finding that a termination resulting from a reduction-in-force constitutes a legitimate reason for an employment action).

Because Grant Thornton has met its burden of providing a legitimate, non-discriminatory reason for Plaintiff's termination, the Court must then turn to the inquiry of "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally [retaliated] against the plaintiff on a prohibited basis." *Cooke*, 601 F. Supp. 2d at 73; *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.D.C. 2008).   Courts are not free to "second-guess an employer's business judgment . . .  [a] plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for its decisions and avoid

summary judgment." *Colbert v. Chao,* No. Civ. A. 99-0625, 2001 WL 710114, at *12 (D.D.C. June 19, 2001) (citations omitted); *Cobbs,* 746 F. Supp. 2d at 143 ("the Court will not 'judge the wisdom of a corporation's business decisions.'")

 With his Cross-Motion, Plaintiff makes absolutely no effort to rebut Grant Thornton's irrefutable legitimate non-discriminatory rationale for his termination – *because he cannot*. Rather, the undisputed evidence shows that Mr. Hopkins clearly *knew* that reductions were being made in his division as a result of the downsizing to the Iraq Stability Program (Def. SOF ¶¶ 112, 119, 52) and *knew* that he needed to find billable work or face possible termination.  Def. SOF ¶¶ 40, 41, 42, 43, 47, 48, 50, 51, 52, 54, 55, 56, 57, 83, 84, 85, 86, 87, 89, 91, 92, 93, 95, 97, 114-116, 117, 120, 121.  In this regard, he initially received "notice" on January 20, 2010 that he had to find work or face termination.  Def. SOF ¶¶ 51-52, 85-88, 96.  Indeed, the evidence clearly shows Plaintiff knew *exactly* why he was terminated – "company cuts."  Def. SOF ¶¶ 158-159, 167, 231.   Because Plaintiff has absolutely no evidence that Grant Thornton's legitimate, non-discriminatory rationale was pretextual, he has clearly failed to meet his burden under *McDonnell-Douglas*.[13]  *See Cobbs*, 746 F. Supp. 2d at 143 (granting summary judgment for employer because plaintiff failed to show that defendant's legitimate motive for plaintiffs termination – a reduction in force – was pretextual).  Thus, summary judgment should be entered for Grant Thornton on Plaintiff's retaliation claim.

---

[13] *Ransom v. Ctr. for Non-Profit Advancement*, 514 F. Supp. 2d 18, 25 (D.D.C. 2007) (Collyer, J.) ("Although the intermediate evidentiary burden shifts back and forth under the *McDonnell Douglas* framework, the ultimate burden of persuasion rests at all times on the plaintiff."); *Brown v. Dist. of Columbia*, 251 F. Supp. 2d 152, 161 (D.D.C. 2003) ("At all times plaintiff retains the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff.").

**D.**  **Plaintiff's FMLA Interference Claim Fails As A Matter Of Law**

As set forth in its Motion, Grant Thornton did not interfere with Plaintiff's FMLA rights when it terminated him on March 16, 2010.  *See* Motion at pp. 37-39.

**1.**  **Grant Thornton Did Not Impermissibly Interfere With Plaintiff's FMLA Rights**

As Plaintiff acknowledges in his Cross-Motion, in order to prevail on an FMLA "interference" claim, the Plaintiff must prove two elements: (1) the employer interfered with, restrained, or denied the "exercise of or the attempt to exercise any right provided" in the FMLA; and (2) that the plaintiff was prejudiced thereby.  *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d. 1, 7 (D.C. Cir. 2010).   As explained in the Department of Labor regulations, "interfering with" the exercise of an employee's rights would include, for example, "refusing to authorize FMLA leave," or "discouraging an employee from using such leave."  29 C.F.R. § 825.220(b).   It would also include manipulation by a covered employer to avoid responsibilities under FMLA, for example: (1) Transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act; (2) Changing the essential functions of the job in order to preclude the taking of leave; (3) Reducing hours available to work in order to avoid employee eligibility.  *Id.*

 Plaintiff does not argue, nor can he, that Grant Thornton (or any of its employees) *refused* to authorize FMLA leave, or *discouraged* him from taking FMLA leave.  This is because the irrefutable evidence demonstrates Grant Thornton did nothing to "interfere" with Mr. Hopkins' purported attempt to exercise his FMLA rights.   Rather, when Mr. Hopkins confided in Ms. Campbell that he was dealing with a difficult time in his personal life, Ms. Campbell reminded Mr. Hopkins of the various benefit options that may be available to him under Grant

Thornton's benefits plan, including the FMLA policy, and provided him with the paperwork. Def. SOF ¶¶ 191-198.   There is no evidence Ms. Campbell, or anyone else, "discouraged" Mr. Hopkins from completing the FMLA paperwork.  Indeed, there is no evidence Mr. Hopkins even told anyone else that he had obtained the FMLA paperwork; thus, *ipso facto*, no other Grant Thornton employees could possibly have attempted to discourage his completion or interfere in any other way.

     2.  **Contrary To Plaintiff's Contention, The FMLA Does Not Impose Strict Liability**

Instead, in his Cross-Motion, Plaintiff contends that the FMLA mandates "strict liability" for an employer whenever it "interferes" with an employee's FMLA rights.   Plaintiff is wrong. The FMLA is not a strict liability statute; rather, the FMLA condones *lawful* interferences with the FMLA rights.  This conclusion is supported by the FMLA's plain language and structure, the Department of Labor's implementing regulations, case law, and simple logic.

In *Throneberry v. McGehee Desha County Hospital*, 403 F.3d 972, 980 (8th Cir. 2005), the Eighth Circuit rejected the argument that an FMLA interference claim mandates strict liability, and held that "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."  *Throneberry*, 403 F.3d at 977.   In so holding, the Eighth Circuit thoroughly analyzed how the plain language of the FMLA supports this conclusion:

> [A]n employee who takes FMLA leave does not have unlimited restoration rights upon returning from leave.  Rather, the FMLA specifically states an employee taking FMLA leave is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B); *see also* 29 C.F.R. § 825.216(a) . . . . Thus . . . the FMLA does not require an employer to retain an employee on FMLA leave if that employee has no right to return to work . . . . ***Therefore, the FMLA's plain language and***

> *structure dictates that, if an employer were authorized to discharge an employee*
> *if the employee were not on FMLA leave, the FMLA does not shield an*
> *employee on FMLA leave from the same, lawful discharge.*

*Id.* at 977-79 (emphasis added).  Moreover, the Eighth Circuit analyzed how the Department of Labor's implementing regulations also permit employers to lawfully interfere with employees' rights to take FMLA leave.  *Id.*  In short, "the regulations make clear that, if an employer chooses to interfere with an employee's FMLA leave rights [with a layoff], the 'employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.'" *Id.* citing 29 C.F.R. § 825.216(a)(1).  Thus, the Eighth Circuit held that "*[a]s long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights. Id.* (emphasis added).[14]  *See also Etheridge v. FedChoice Federal Credit Union*, Civ. No. 09-1923 (GK), 2011 WL 2160259, at *10 (D.D.C. June 2, 2011) (" . . . the employer is under no responsibility to restore the employee to her prior position.").

Other circuits are in accord.  In *Smith v. Diffee Ford-Lincoln –Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002), the court recognized that "*an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request.*" *Id.* (emphasis added) (citation omitted).  Given that understanding, the Tenth Circuit held "*an*

---

[14]     *See also Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008); *Stallings v. Hussman Corp*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing *Throneberry* and holding that an employee can only recover for an interference claim if they were denied substantive rights under the FMLA for a reason **connected with** their FMLA leave); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (granting summary judgment for the defendant since "[n]o reasonable juror could deduce from the . . . evidence that [the plaintiff's] termination was **related to** her request for an FMLA leave")(emphasis added).

***employee may be dismissed, preventing her from exercising her statutory right to FMLA leave*** ***. . . if the dismissal would have occurred regardless of the employee's request for or taking of*** ***FMLA leave.***" *Id.* at 961 (emphasis added).   Accordingly, where an employer's reason for dismissal is "insufficiently related to FMLA leave," the reason will not support the employee's recovery.  *Id.; see also Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 507-508 (6th Cir. 2006)(holding FMLA is not a strict liability statute); *Gunnell v. Utah Valley State Coll*., 152 F.3d 1253, 1262 (10th Cir. 1998); *see generally O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352–55 (11th Cir. 2000) (implicitly holding an employer who discharged an employee on FMLA leave was not liable under an interference theory under the FMLA because the employer showed it would have discharged the employee had she not been on FMLA leave).

Logic further dictates that the FMLA does not mandate imposition of strict liability for claims of interference.  It is self-evident that "every discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights."  *Throneberry* 403 F.3d at 980. However, "the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Id.*  As the Eighth Circuit reasoned:

> If an employee on FMLA leave harasses a supervisor or a co-worker, [plaintiff] would contend the employer must retain that harassing employee until the FMLA leave ends. That would be a senseless proposition. The FMLA makes clear the harassing employee enjoys no greater rights while on FMLA leave than had the employee not taken FMLA leave. Thus, if the employer would have discharged the employee for harassing a supervisor or co-worker if the employee were not on FMLA leave, then the employer would be justified in discharging the employee for harassment while the employee was on FMLA leave. To be clear, the employer in such a circumstance would not have to provide the harassing employee with FMLA leave rights and then wait until the FMLA leave ends before deciding to discharge the employee for harassment . . . ***Another example*** ***of an employer's lawful ability to interfere with an employee's FMLA leave*** ***rights might be when an employer goes out of business while an employee is on*** ***FMLA leave. Discharging the employee on FMLA leave clearly interferes with***

- 16 -

> *the employee's rights under the FMLA. However, holding the employer strictly liable for a violation of the FMLA in such a circumstance would be preposterous.*

*Id.* (emphasis added); *see, e.g., Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 732-33 (10th Cir. 2000) (defendant did not interfere with plaintiff's rights under the FMLA where plaintiff was terminated for previous use of alcohol on the job and would have been dismissed regardless of FMLA leave); *Ballato v. Comcast Corp.*, No. Civ. 09-2236 JRT/JJG, 2011 WL 2728265 (D. Minn. July 13, 2011)(granting summary judgment for employer on FMLA interference claim because plaintiff was terminated for reasons unrelated to his FMLA leave, namely, his disturbing communications with co-workers and his unexcused absences).

This conclusion is faithful to the FMLA's purpose to accomplish its goals "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3); *see Cobbs*, 746 F. Supp. 2d. at 144 ("The [FMLA] attempt[s] to provide employees with 'reasonable leave,' without completely ignoring the 'demands of the workplace.'"). In sum, holding an employer strictly liable for violating the FMLA by discharging an employee on FMLA leave ***when a company is shutting down or reducing its workforce*** would not balance the legitimate interests of the employer with the FMLA's leave-granting mandate. *See, e.g., Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1157 (7th Cir. 1997) (holding that an employer may terminate an employee on FMLA leave whose job was eliminated as part of a reduction in force); *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349 (11th Cir. 2000) (same); *Bodfield v. AG Valley Co-op., Non-Stock*, No. 4:10CV3097, 2011 WL 1565810 (D. Neb. April 25, 2011) (granting summary judgment for employer on FMLA interference claim because "[employer] would have eliminated Plaintiff's position as part of the RIF, whether or not Plaintiff had been in the midst of taking FMLA leave.")

Here, the overwhelming evidence shows that Plaintiff would have been terminated for lack of billable work in connection with the dissolution of the International Division *regardless* of whether he ever requested, or applied for, FMLA leave.  Def. SOF ¶¶40-43, 45-56, 57-83, 84-99, 100-110, 111-154, 155-160.  Thus, Grant Thornton respectfully submits that it is entitled to summary judgment on Plaintiff's interference claim.  *See Henson v. Hawker Beechcraft Corp.*, No. 4:09CV00440JLH, 2010 WL 3167528 at *9 (E.D. Ark. Aug. 10, 2010) ("Henson alleges that HBC interfered with his rights by terminating his employment before his request for FMLA leave was granted. But the evidence . . . indicates that Henson would have been terminated for poor performance regardless of whether he took FMLA leave.  HBC is entitled to summary judgment on his interference claim.")

### 3. **Plaintiff Was Not Prejudiced By Any Of Grant Thornton's Actions**

Finally, Plaintiff's attempt to claim "prejudice" as a result of his termination is disingenuous.   Plaintiff was placed on the "bench" in November 2009.  Def. SOF ¶ 45.   With the exception of his brief, unsuccessful tenure on the Washington Headquarters Service Project in February 2010, Plaintiff was essentially "on the bench" *for over four months*.  *Id.* at ¶¶ 133-138.   For a consultant at Grant Thornton, this is an "unusually long period of time for not be assigned to a billable project."  *Id.* at ¶ 137.   In this regard, it was exceptionally *generous* that Grant Thornton allowed Mr. Hopkins to maintain his employment with the company until March 2010 given his low level of utilization.   *Id.* at ¶¶ 134-138.   To now claim "prejudice" is, quite frankly, outrageous.

Nevertheless, an FMLA violation prejudices an employee only when the "employee loses compensation or benefits *by reason of the violation*, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate

equitable relief." *Roseboro*, 606 F. Supp. 2d. at 108 (emphasis added).  Here, Plaintiff claims he was prejudiced in the form of lost compensation and benefits during his subsequent period of unemployment.  Pl. SOF ¶¶ 15-20.[15]  Even if Plaintiff had "requested" FMLA leave (which he did not), and suffered from a serious health condition (which he did not), Ms. Baker opined (in her FMLA certification form created after the commencement of litigation and with the assistance of counsel) that she believed Mr. Hopkins would have needed – *at most – three weeks of leave*.  Def. Ex. 96 (noting that the estimated period of "incapacity" would have been from 3/10/10 to 4/1/10).   Yet, the FMLA only entitles eligible employees to *unpaid* leave.  29 U.S.C. § 2612.  Instead, upon his termination on March 16, 2010, Plaintiff received four weeks of severance pay, unused vacation pay, and received health benefits through the end of March 2010.  Def. SOF ¶¶ 161-162.  Thus, Plaintiff suffered no loss of compensation or benefits "by reason of" his termination from Grant Thornton; rather, he actually received *more* compensation (four weeks of pay) as a result of his termination than if he had taken three weeks of *unpaid* FMLA leave through the end of March 2010.

In his Cross-Motion, Plaintiff also seeks compensatory damages for the period of time he was unemployed *after he was fired from his subsequent employment with Booz Allen Hamilton*.  Pl. SOF ¶¶ 16, 19, 20 (claiming he did not receive compensation or benefits from October 2010 through February 2011).   This is ridiculous.  After he was let go from Grant Thornton, and received a four-week severance payment with health benefits and unemployment benefits, Plaintiff quickly obtained employment with Booz Allen Hamilton in May 2010.  Def. SOF ¶¶ 167-168.  However, after just a few months of employment with Booz Allen Hamilton, in September 2010 Plaintiff was removed from his project due to his "unsatisfactory performance"

---

[15]     In this regard, Plaintiff does not claim any other "monetary losses."

(namely his "poor performance," and "overcharging the client by 30 hours").  Def. SOF ¶ 170. Because he could not find additional billable work, Mr. Hopkins was terminated from Booz Allen due to a lack of "billable work." Def. SOF ¶171.  *In short, Mr. Hopkins was terminated from Booz Allen for the very same reason he was let go from Grant Thornton!*  To now claim that Grant Thornton is somehow responsible for compensatory damages arising from his involuntary termination from Booz Allen Hamilton is preposterous.  Plaintiff apparently performed poorly at Booz Allen and, much like at Grant Thornton, could not keep himself staffed on a project.  Def. SOF ¶¶ 170-171.  He must live with the consequences of his own actions.

For the reasons discussed above, Grant Thornton did not violate the FMLA here, but even if it did, Plaintiff suffered absolutely no prejudice.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Grant Thornton respectfully requests that the Court deny Plaintiff's Cross-Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment on Counts One through Six of the Complaint.

Respectfully submitted,

September 9, 2011

*/s/ Jonathan G. Rose*
Jonathan G. Rose (DC Bar 446208)
Emily S. Costin (DC Bar 500201)
Alston & Bird, LLP
950 F Street, NW
Washington, D.C. 20004
Telephone (202) 239-3300
Facsimile: (202) 239-3333
jonathan.rose@alston.com
emily.costin@alston.com

*Counsel for Defendant Grant Thornton LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September 2011, I caused a true copy of the

Memorandum of Law In Support of Defendant Grant Thornton LLP's Opposition to Plaintiff's

Cross-Motion for Summary Judgment to be filed via the Court's electronic filing system (ECF)

which will automatically provide notice upon the following counsel of record:

> Keith William Diener
> Christopher Brown
> Ackerman Legal, PLLC
> 1250 Connecticut Ave.
> Suite 200
> Washington, DC 20036

> *Counsel for Plaintiff Richard Hopkins*

> _/s/ Jonathan G. Rose_____
> Jonathan G. Rose